REID, MURDOCK & CO., Appellant, v. WESTERN CANDY & BAKERS SUPPLY COMPANY, Respondent.

St. Louis Court of Appeals. Argued and Submitted October 4, 1910. Opinion Filed October 24, 1910.

1. SALES: Contract: Construction. On July 8, 1907, plaintiff and defendant contracted for the future shipment of fifty cases of cherries, providing that if plaintiff was prevented from making a delivery of any or all of the goods, by failure of crop or accident, he should not be responsible for any loss, and further providing that plaintiff should ship and the buyer accept when the goods were ready, except as otherwise provided, and in case of a short pack defendant should accept a pro rata share. It could not be determined before July 15th as to how large the season's pack would be. There was a "short pack," and on October 5th a fifty per cent shipment was made. *Held*, that the contract contemplated a shortage in the 1907 crop, and that plaintiff acted within his contract rights in sending the pro rata shipment.

2. ————: Delivery of Goods Not Contracted for: Rights of Buyer. Under a contract between plaintiff and defendant for the future delivery of cherries, providing that a pro rata shipment could be made in case of a short 1907 crop, where plaintiff made a shipment of cherries grown in a prior year, they need not have been accepted.

3. CONTRACTS: Performance: Motive. The motive actuating a party to a contract in availing himself of the provisions of the contract is wholly immaterial, so long as he acts within the contract.

Appeal from St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds,* Judge.

REVERSED AND REMANDED (*with directions*).

*Bishop & Cobbs* for appellant.

*Willis H. Clark* for respondent.

150 App.—44

REYNOLDS, P. J.—This action was commenced before a justice of the peace on an open account for eighty-one dollars, claimed by plaintiff as due for twenty-five cases of cherries, sold, shipped and delivered by plaintiff to defendant and received by the latter on an order other than the one hereafter referred to as the basis of the counterclaim of the defendant. Defendant filed a counterclaim for damages for non-shipment of twenty-five other cases of like cherries, claimed to have been contracted for, the damage alleged to have arisen by reason of the failure to deliver and the consequent purchase from other parties of cherries of like quantity and quality but at an advanced price, $131.35 being claimed as the amount of this damage. On a trial before the justice a judgment was rendered in the amount of nineteen dollars in favor of defendant. From this plaintiff appealed to the circuit court, where on a trial before the court, a jury having been waived, the finding and judgment again went for defendant for nineteen dollars. A motion for new trial was filed, overruled, exceptions saved and plaintiff duly perfected an appeal to this court.

It appears by the evidence in the case that on the 8th of July, 1907, a contract, the one set up by defendant in its counterclaim, was entered into between the parties for a future shipment, to order of defendant, of fifty cases of cherries of specified brand and quality, at $8.75 per case. This contract is in the form of a printed and written order in which, among other things, it is specified that it is subject to the printed provisions on the back of the order. The relevant of these conditions are, that the seller (plaintiff), does not agree to deliver the goods on any certain day, but will act in good faith and ship promptly after the goods are packed and ready for the market, and that "if seller is prevented from making delivery of any or all of the goods hereunder by . . . . *failure of crop* or accident, then seller is not to be held responsible for

any loss or damage." It is further contracted that the "seller is to ship and buyer to accept when goods are ready, except as otherwise provided. Buyer to accept a pro rata share in event of short pack." This order-contract was signed by the representatives of each of the parties and accepted by plaintiff and on October 5, 1907, plaintiff billed to defendant twenty-five cases of the cherries, it being noted on the invoice "fifty per cent pro rata delivery. Above is a delivery on your 'future' contract." This was signed by the plaintiff. The correspondence introduced showed that defendant claimed twenty-five cases more of these cherries under the contract and that plaintiff refused to deliver any more, claiming that it had fulfilled its contract by delivering fifty per cent. of the amount ordered, and calling the attention of the defendant to the pro rata condition of the contract in case of a short pack, also claiming that there had been a short pack and that the fifty per cent. was a very liberal delivery under the circumstances. Afterwards on January 6, 1908, defendant purchased eighty-one dollars worth of goods from the plaintiff, and then refused to pay for them, making its counterclaim. There was evidence tending to show that the attention of the defendant was called to this pro rata or "short pack" clause, and there is no pretense of any mistake, fraud or concealment.

In point of fact the salesman who represented the plaintiff in obtaining the first order from the defendant, according to the testimony of the party who acted for the defendant in the transaction and who was put on as a witness by defendant, called the attention of defendant's representative to this short pack or crop clause and told him that he had better order liberally because there was likely to be a short pack. The agent of the plaintiff, testifying for plaintiff, and uncontradicted in his testimony as to that conversation, testified that when he took the order in

controversy on July 8, 1907, he told the representative of the defendant that from what he could gather he considered cherries a good purchase; that when he took the order on July 8th he called the attention of defendant's representative to the pro rata delivery clause in the contract and told him that in the event of a short crop plaintiff would deliver pro rata and that he used this as an inducement to the defendant to make his order as large as possible and that if he made his order larger and received only a pro rata delivery he might still have enough for his needs; that later on he got this same representative of the defendant to order one hundred cases more and that that was the argument he used to him when he took the order for one hundred cases. The plaintiff had refused to accept this latter order, all orders being subject to its acceptance and approval. There was also evidence to the effect that while the crop of 1907 was short, plaintiff had in stock like cherries left over from prior crops and that it was out of this surplus that the shipment was made. It was further claimed by the defendant in evidence, that the name "Reindeer," which was the brand contracted for, was a mere trade designation, identifying the plaintiff's brand and that cherries of like grade could have been purchased by plaintiff and shipped on the contract, but that the crop of 1907 being a short crop, in fact, according to some of the testimony, almost a total failure, the price of the cherries had advanced and hence plaintiff, claiming under the contract, had failed to make delivery of the full number of fifty cases contracted for. It was also in evidence that the packing season for cherries usually ends along the middle or latter part of July and that the trade is not in a position to know the extent of the pack before the middle of July, as they get their information through trade papers, brokers, etc. If there is a shortage in the pack many of the packers try to conceal it. The packing season

runs during the month of June and the first half of July; that the extent of the "pack" ought to be known by the 15th of July. Packers begin to make shipments soon after the middle of July. The amount of the advance after July 15, 1907, was in evidence. The learned circuit judge found for plaintiff in the sum of eighty one dollars, the value of the cherries shipped, and found in favor of defendant on its counterclaim in the amount of $100, rendering judgment for nineteen dollars, the difference between these amounts. In rendering judgment that judge handed down a memorandum in which, among other things, he stated that he was of the opinion that the "short pack" clause of the contract was not of the essence of the agreement at first, unless the pack of that year was alone intended by the parties; that the delivery under the contract was not of the pack of that year but of the year previous and there was no shortage shown in the market of that pack or of cherries of that pack and quality. We have read all the testimony in this case and are compelled to say that we cannot agree with the learned trial judge in his conclusions. So far as the contract is to be interpreted by the acts of the parties and the known rules of the trade, it was evidently a contract having reference to the crop of 1907; provided for the contingency of a short crop in 1907. The parties were contracting with reference to the crop of 1907. It was entered into July 8, 1907, and all the testimony bears out the proposition that the extent of the crop or pack of 1907 was not and could not then have been known. If it was to include goods then on hand, the short pack clause was meaningless. The contract is plain and unmistakable in its provisions, that if there was a "short pack," plaintiff was not obliged to make full delivery. It is true that the delivery made was of a prior pack or crop. Defendant evidently knew that and was not obliged to have accepted it as a

delivery under the contract.   The learned trial judge has further said in his memorandum that he was of the opinion that the real difficulty was the advance in the market, and that plaintiff sought to diminish the consequent loss by appealing to the "short pack" clause. That might well be.   That short pack clause was undoubtedly embodied in the contract for that very purpose.   Plaintiff was within its contract rights when it limited delivery--the motive actuating it in availing itself of the clause is wholly immaterial, so long as it acted within the contract.

We cannot agree, on the facts, with the construction which the learned trial judge placed on the contract.   We think that was an error of law leading to a wrong conclusion on the facts.   On the law and the facts there should have been judgment for the plaintiff for the amount claimed, with interest, and against the defendant on its counterclaim.   The judgment is reversed and the cause remanded with directions to the circuit court to enter up judgment accordingly. *Nortoni, J.,* and *Caulfield, J.,* concur.